AUSA: Leslie B. Arffa

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**25 MAG 3510**

UNITED STATES OF AMERICA

v.

VESEL KUKAJ,

Defendant.

**COMPLAINT**

Violations of 18 U.S.C.
§§ 2251(a) and (e),
2252A(a)(5)(B) and (b)(2),
2252A(a)(2)(B) and (b)(1).

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

Christopher Rumper, being duly sworn, deposes and says that he is a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

## COUNT ONE
### (Sexual Exploitation of a Child)

1. From at least in or about February 2025 through at least in or about November 2025, in the Southern District of New York and elsewhere, VESEL KUKAJ, the defendant, employed, used, persuaded, induced, enticed, and coerced a minor to engage in sexually explicit conduct, for the purpose of producing a visual depiction of such conduct, and for the purpose of transmitting a live visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce and mailed, and the visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and the visual depiction was actually transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce and mailed, to wit, VESEL KUKAJ induced an approximately 15-year-old minor victim ("Minor Victim-1") to engage in sexually explicit conduct, and photograph the conduct, and transmit the images over the Internet to KUKAJ in Manhattan, New York.

(Title 18, United States Code, Section 2251(a) and (e)

## COUNT TWO
### (Receipt and Distribution of Child Pornography)

2. From at least in or about February 2025 through at least in or about November 2025, in the Southern District of New York and elsewhere, VESEL KUKAJ, the defendant, knowingly received and distributed material that contained child pornography using a means and facility of interstate and foreign commerce and that had been mailed and had been shipped and transported in and affecting interstate and foreign commerce by any means, including by computer,

to wit, KUKAJ distributed a file containing sexually explicit images of a minor from an electronic device in Manhattan, New York via a messaging application.

(Title 18, United States Code, Sections 2252A(a)(2)(B) and (b)(1).)

## COUNT THREE
(Possession of Child Pornography)

3. From at least on or about February 2025 through at least on or about November 2025, in the Southern District of New York and elsewhere, VESEL KUKAJ, the defendant, knowingly possessed and accessed with intent to view, and attempted to possess and access with intent to view, a book, magazine, periodical, film, videotape, computer disk, and other material that contained an image of child pornography that had been mailed, shipped and transported using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, and that was produced using materials that had been mailed, and shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, to wit, KUKAJ possessed on his phone in Manhattan, New York sexually explicit images and videos of minors.

(Title 18, United States Code, Sections 2252A(a)(5)(B), and (b)(2).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I am a Special Agent with HSI and have been since approximately December of 2024. Prior to that I was employed as an Investigative Analyst (Cyber Systems) with the United States Secret Service for approximately five years. I am currently assigned to the Child Exploitation Investigations Unit. In that position, I have investigated numerous cases involving child exploitation and the production, receipt, distribution, and possession of child pornography.

5. I have been personally involved in the investigation of this matter. I am familiar with the information contained in this Complaint based on my participation in the investigation, my review of documents and extracted material from electronic devices, my conversations with other law enforcement officers, and my training and experience. Because this Complaint is being submitted for the limited purpose of establishing probable cause, I have not included the details of every aspect of the investigation. Where actions, conversations, and statements of others are related herein, they are related in substance and in part, except where otherwise indicated.

### Overview

6. As described further below, since approximately July 2025, HSI has been investigating VESEL KUKAJ, the defendant, for his use of online messaging platforms to encourage minors or individuals he believed to be minors to create and transmit sexually explicit videos and images of themselves and to engage in acts of self-harm. KUKAJ also threatened and extorted at least one minor victim (Victim-1) when she attempted to end communications with him, and on at least one occasion KUKAJ shared with others sexually explicit images he had induced Victim-1 to create.

### Minor Victim-1

7.      Based on my involvement in this investigation, including conversations with other law enforcement officers, review of documents and communications, and review of publicly available information, I have learned the following:

      a.      The Royal Canadian Mounted Police (RCMP) National Child Exploitation Crime Centre ("NCECC") is a Canadian national program tasked with reducing the vulnerability of children to Internet-facilitated sexual exploitation. As part of its efforts, NCECC works with online social media/messaging platforms to reduce the distribution of child pornography on the Internet.

      b.      In or about July 2025, HSI's Ottawa field office ("HSI Ottawa") received a tip from NCECC indicating that a user of a particular online messaging platform ("Platform-1") had been involved in the extortion of an approximately 15 year-old minor victim, Minor Victim-1, while also directing Minor Victim-1 to create explicit pictures and videos, which, based on my review and training and experience, and as set forth in more detail below, I believe constitute child sexual abuse material ("CSAM"), and also to engage in acts of self-harm.

      c.      On or about August 6, 2025, HSI Ottawa interviewed Minor Victim-1 and conducted a consensual extraction of Minor Victim-1's cellular device (the "Minor Victim-1 Cellphone"). During the interview, Minor Victim-1 stated, among other things, that:

           i.      Beginning in or about February 2025 Minor Victim-1 began exchanging electronic messages with another user of Platform-1 (the "User-1") on Platform-1. As part of those communications, User-1 sent Minor Victim-1 sexually explicit pictures and videos of himself. User-1 encouraged Minor Victim-1 to send him, and Minor Victim-1 did in fact send him, sexually explicit pictures of herself, including pictures of Minor Victim-1 "cutting' herself, meaning engaging in acts of self-harm while unclothed.

           ii.     When Minor Victim-1 attempted to cease communications with User-1 and deleted pictures she had taken from their message exchange on Platform-1, User-1 messaged Minor Victim-1 and explained that he had saved the photographs and messages that Minor Victim-1 previously had sent to him. User-1 threatened to distribute photographs of Minor Victim-1 and demanded money in exchange for not doing so. Based on my review of reports provided by NCECC, I know that User-1 ultimately did send sexually explicit photographs of Minor-Victim-1 to at least one other Discord user. Minor Victim-1 ended communications on or about the end of July 2025.

      d.      Based on my review of the contents of the Minor Victim-1 Cellphone, as well as my conversations with other law enforcement officers about the same, I have learned that the extraction contained the following material, among other contents:

      e.      *Sexually Explicit Communications, CSAM, and Extortion.* Communications between User-1 and Minor Victim-1 on Platform-1 indicate that User-1 knew Minor Victim-1 was underaged. Nonetheless, User-1 directed and encouraged Minor Victim-1 to create and later distribute sexually explicit photographs and videos of herself—which, as set forth

3

herein, I believe constitutes CSAM—and, while doing so, to engage in self-injurious behavior. User-1 also attempted to extort and threaten Minor Victim-1 when she attempted to end communications between them. Some of the communications between User-1 and Minor Victim-1 that I reviewed included:

    i.  On or about May 12, 2025, Minor Victim-1 messaged User-1, "I love but HATE being a minor." User-1 responded "Onlyfans," "Or sell nudes . . . Do it," and then asked "where's ur boob."

    ii.  On or about June 7, 2025, User-1 wrote, "Cut my name on ur tits." Minor Victim-1 responds with, "I stopped cutting," but User-1 replied "Do it again." In context, based on Minor Victim-1's interview statements, my review of the extraction of the Minor Victim-1 Cellphone, as well as on my training and experience, I believe that "I stopped cutting" refers to Minor Victim-1 harming herself at User-1's direction.

    iii.  On or about July 23, 2025, User-1 wrote to Minor Victim-1 "tryna delete pics from our chat was crazy lol," and "nice try though." In context, based on Minor Victim-1's interview statements, my review of the extraction of the Minor Victim-1 Cellphone, as well as on my training and experience, I believe when User-1 wrote "nice try though," he was informing Minor Victim-1 that she would be unable to eliminate records of their conversations because he had saved his own records.

    iv.  On or about July 23, 2025, User-1 also wrote "I have everything . . . I mean EVERYTHING," and so you "wouldn't wanna do that lol." Minor Victim-1 responded, "Ur gonna leak me aren't u?," and User-1 wrote back, telling Minor Victim-1 to show him her "boobs." When Minor Victim-1 refused, User-1 wrote, "yeah I ain't letting that happen lol." Later in the conversation, User-1 wrote, "U got a hour or im leaking everything," "Gay 200 usd by tonight or everyone seeing it." In context, based on Minor Victim-1's interview statements, my review of the extraction of the Minor Victim-1 Cellphone, as well as on my training and experience, I believe User-1 was threatening to share illicit images of Minor Victim-1 unless she continued sending him illicit images and sent him 200 dollars in payment.

  f.  *CSAM Images.* Contained within Minor Victim-1's device were over approximately one dozen images that, based on my training and experience, I believe to be CSAM, including explicit images of Minor Victim-1 during which Minor Victim-1 also engaged in acts of self-harm.

  g.  *Photograph of User-1.* Review of Minor Victim-1's cellular extraction revealed what appears to be an image of User-1's face saved to the Minor Victim-1's camera roll.

### Identification of VESEL KUKAJ

  8.  I believe that VESEL KUKAJ, the defendant, is User-1, who communicated with Minor Victim-1 on Platform-1. That conclusion is based on the following, which I have learned from my participation in this investigation, including conversations with other law enforcement officers, review of documents and communications, and review of publicly available information:

   a. The account on Platform-1 that communicated with Minor Victim-1 described in paragraph 7, *supra*, *i.e.*, the account used by User-1, is registered under a particular email address ("Email Account-1"). Based on my review of records from the provider for that email account ("Provider-1"), I know that Email Account-1 is associated with a payment account that lists "VESEL KUKAJ" as the Customer Display Name.

   b. The Platform-1 account used by User-1 to communicate with Minor Victim-1 is subscribed to a particular Internet Protocol ("IP") address located in Manhattan, New York. Based on my review of records from the communications company that services that IP address, I know that the subscriber activated the Plaintform-1 Account from an IP address that resolves to a location in Manhattan, New York (the "Service Address").

   c. From my review of KUKAJ's passport records, I know that the Service Address is listed as KUKAJ's address on his passport. I also know from my communications with the U.S. Postal Service that the Service Address is where KUKAJ receives U.S. Mail. Additionally, based on my review of passport records, the image of User-1's face saved to Minor Victim-1's cameral roll appears to be KUKAJ. Accordingly, and based on my surveillance of the Service Address, I believe that the Service Address is where KUKAJ resides (the "Kukaj Residence").

### Search of the Kukaj Residence and KUKAJ's Electronic Devices

  9. On or about November 4, 2025, I participated in a search of the Kukaj Residence and KUKAJ's person pursuant to a judicially authorized search warrant. KUKAJ, the defendant, was present in the residence during the execution of the search warrant. The search warrant also authorized law enforcement to seize and search electronic devices on KUKAJ's person, and/or located in his residence, at the time of the search. Law enforcement seized at least two electronic devices, including a cellphone from KUKAJ's person (the "KUKAJ Cellphone"). KUKAJ, who was not under arrest at the time, voluntarily provided law enforcement with the passcode to the KUKAJ Cellphone, which based on my review I know contained at least 20 pictures and over a dozen videos that appeared to be CSAM, as well as numerous electronic messages explicitly referencing CSAM, including, for example:

   a. Images of Minor Victim-1, including images previously identified during law enforcement's review of the contents of the Minor Victim Cellphone, such as an image of Minor Victim-1 unclothed having cut herself.

   b. Sexualized communications with and sexually explicit images of approximately 12 other victims. Based on my review of the contents of the KUKAJ Cellphone, as well as my training and experience, I believe that these approximately 12 individuals were minors because of their appearances, the content of their messages including some of the victim's statements that they were underage, and review of the passport record of at least one victim.

   c. Based on the messages between KUKAJ and the minor victims, it appears that KUKAJ discussed meeting after school with at least three of the minor victims. At least four of the victims sent sexually explicit videos to KUKAJ. In one of the videos, one of the victims is

having sexual intercourse with a third-party; during her communications with KUKAJ, the individual in the video claimed that she was 13 years-old.

        d.      A photograph of an individual claiming to be a minor with the defendant's first name ("VESEL") cut into her leg with blood dripping from each letter.

        e.      An electronic message exchange with a minor victim in which KUKAJ and the minor arrange to meet to engage in sexual activity.

WHEREFORE, I respectfully request that VESEL KUKAJ, the defendant, be imprisoned or bailed, as the case may be.

*with permission - Christoph Rumper*

———————————————
Christopher Rumper
Task Force Officer
U.S. Department of Homeland Security
Homeland Security Investigations

Sworn to before me this 4th November, 2025.

———————————————
THE HONORABLE HENRY J. RICARDO
United States Magistrate Judge
Southern District of New York